UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRAMINEX, L.L.C.,

          Plaintiff,          Case Number 18-13727

v.                                                 Honorable David M. Lawson

AKTIEBOLAGET CERNELLE, aka
A.B. CERNELLE COMPANY,

          Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING CASE WITHOUT PREJUDICE

Before the Court is the defendant's motion to dismiss this declaratory judgment action for lack of subject matter jurisdiction. Plaintiff Graminex, L.L.C. seeks a declaration that it has not infringed trademarks belonging to defendant A.B. Cernelle Company, that Cernelle abandoned certain trademarks, and that Cernelle procured renewal of its trademark registrations by making fraudulent statements to the United States Patent and Trademark Office. Cernelle argues that Graminex lacks standing to pursue these claims, and that Graminex failed to meet the heightened pleading standard required for fraud allegations. Graminex lacks standing to pursue claims for declarations of noninfringement and abandonment of the marks. It also lacks standing to pursue its claims for cancellation of the trademarks. In both instances, Graminex has not alleged an actual or imminent injury that is concrete and particularized. Therefore, the Court will grant the motion to dismiss and dismiss the case.

I.

This lawsuit represents another chapter in the long-running dispute between two companies that produce flower-pollen-based nutraceutical products intended to promote prostate health. Cernelle is a company based in Sweden. For over fifty years, it has produced dietary supplements

(nutraceuticals), including its brands CERNITIN and CERNILTON. The Food and Drug Administration (FDA) had verified Cernelle's claims made in connection with its products and Cernelle obtained approval for its products in Europe.

Graminex is based in Michigan. Over a dozen years ago, it was a source of raw, threshed flower pollen for Cernelle and distributed Cernelle's products in the United States. Their relationship deteriorated when Cernelle accused Graminex and its chief operating officer, Cynthia May, of attempting to appropriate its trademarks, prompting a lawsuit in this Court in 2003. The Court issued a preliminary injunction that prohibited the defendants from alienating Cernelle's trademarks and dealing in products using those marks. That case was settled in 2006, and the parties signed a detailed settlement agreement. Graminex confirmed Cernelle's ownership of the marks and Graminex was prohibited from using them. The settlement order also included a permanent injunction. The injunction, among other things, restricted Graminex's use of Cernelle's registered trademarks CERNILTON and CERNITIN.

Following the settlement, Graminex alleges, Cernelle stopped using the CERNILTON and CERNITIN registered marks (and others) in the United States. It also stopped selling products branded with those marks directly to wholesalers, retailers, and end users in the United States, and stopped selling nutritional supplements.

In 2018, Cernelle came upon information that convinced it that Graminex was violating the settlement agreement and the permanent injunction. It sent three cease-and-desist letters. Graminex's responses prompted Cernelle to file a motion to enforce the settlement agreement and hold Graminex in contempt for violating the injunction. While that motion was pending, Graminex filed the present lawsuit seeking declaratory relief. Graminex says that it believes Cernelle will pursue an infringement action against it for the same purported use of the CERNILTON and

CERNITIN marks alleged in the contempt motion in the other case. It preemptively seeks a declaration of its rights. Graminex also requests that the Court cancel Cernelle's registrations as to eight of its trademarks based on Cernelle's alleged fraudulent maintenance of registrations over the years.

Graminex also alleges that, despite Cernelle's non-use of its marks, between 2010 and 2016 Cernelle's counsel, acting with Cernelle's knowledge and approval, filed false statements and specimens with the United States Patent and Trademark Office (USPTO) to maintain and renew federal trademark registrations for the following marks:

- CERNITIN, Registration No. 2,529,008;
- CERNILTON, Registration No. 3,038,705;
- POLLEN STARK, Registration No. 2,519,275;
- CERNI-QUEEN, Registration No. 2,447,819;
- NAPOLEON GOLD, Registration No. 2,661, 290;
- POLLISPORT, Registration No. 2,519,274;
- CERNELLE, Registration No. 0822267; and
- POLLISTABS Sport, Registration No. 2,495,583.

As to all those marks, Cernelle's counsel filed a "Combined Declaration of Use/Application for Renewal of Registration of a Mark under Sections 8 & 9," accompanied by a specimen of use that did not show then-current use of Cernelle's trademark in United States commerce. Instead, the specimens actually showed Graminex's products as offered or formerly offered for sale by unrelated third parties in secondary markets over which Cernelle had no control. The application was executed by Cernelle's attorney who declared, under oath, that the marks were in use in commerce.

On September 8, 2017, Graminex and its legal counsel received the first of the three cease-and-desist letters from Cernelle's counsel. The letter accused Graminex of repeatedly violating the terms of the permanent injunction and breaching the settlement agreement by actively selling products that contain Cernelle's trademarks in both the United States and around the world, and

by displaying on Graminex's website clinical studies on Cernelle's products. The letter summarized the events surrounding the earlier litigation, including that Cernelle previously sought to restrain Graminex from "infringing Cernelle's registered trademarks." Cernelle also accused Graminex of unlawfully registering the CERNILTON mark in other jurisdictions. The letter noted that "Graminex has resumed the very conduct that Cernelle challenged in the litigation, [which] the Court determined to be unlawful[,] and that Graminex agreed and was ordered to cease and desist. The conduct is also independently wrongful under the laws of numerous countries, is misleading and actionable."

When Cernelle's counsel received Graminex's apparently unsatisfying response, he sent another cease and desist letter to Graminex on October 17, 2017. The second correspondence indicated that Cernelle "remains committed to pursuing all available legal remedies for the continued violations of the Injunctions and Settlement Agreement." Counsel wrote:

> Plainly, if Graminex were not attempting to trade upon the world-wide reputation of Cernelle's products, it would have no need to continually reference them.
>
> As set forth in . . . prior correspondence, without waiving any of its rights, Cernelle again demands that Graminex cease and desist all action that is in direct violation of the Injunctions and in material breach of the Settlement Agreement. Should Graminex refuse to provide the additional information requested and cease all unlawful conduct as outlined herein, Cernelle will have no choice but to pursue all available legal remedies to rectify Graminex's violations.

ECF No. 1-2, PageID.36.

On July 19, 2018, Cernelle's counsel sent a third letter to Graminex informing it of Cernelle's intention to file a motion for contempt, which was enclosed. The letter indicated that Cernelle had "developed substantial evidence of [Graminex's] involvement with the foreign entities utilizing Cernelle's trademarks," and that Cernelle had "established Graminex's violations

of the permanent injunction and settlement agreement in the United States." Cernelle filed the motion for contempt on August 24, 2018. *See* Case No. 03-10291, ECF No. 89.

Graminex alleges here that "the threats and allegations made by Cernelle's counsel, which go beyond the motion currently pending in Civil Action No. 2:03-cv-10291-DML, have created an actual, substantial, and continuing controversy between Cernelle and Graminex concerning the right of Graminex to supply, sell, offer to sell, and distribute nutraceuticals and nutritional supplements to its customers abroad." Compl. ¶ 14.

On November 30, 2018, Graminex filed its complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that "Graminex's supply, sale, offering for sale, advertising and distribution of nutraceuticals and nutritional supplements do not infringe any proprietary rights owned by Cernelle and do not result in any acts of unfair competition with Cernelle" (Count I) and that Cernelle has abandoned the CERNILTON and CERNITIN trademarks based on non-use of the marks (Count II). The complaint also requests that the Court order the cancellation of the registration for the marks CERNITIN, CERNILTON, POLLEN STARK, CERNI-QUEEN, NAPOLEON GOLD, POLLISPORT, CERNELLE, and POLLITABS SPORT under 15 U.S.C. § 1119 (Counts III-X).

In responding to the complaint with its motion to dismiss, Cernelle argues that (1) there is no "actual controversy" between the parties beyond the contempt proceeding that furnishes a basis for jurisdiction under the Declaratory Judgment Act; (2) even if there were, the Court should decline to exercise jurisdiction over the mater; (3) Graminex lacks standing to challenge the registrations for CERNILTON and CERNITIN; and (4) the fraud counts must be dismissed because they were not pleaded with particularity.

II.

Cernelle brings its motion to dismiss under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) authorizes the dismissal of a civil action "for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The issue of subject matter jurisdiction lurks in every federal case, because the Constitution authorizes federal courts to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The motion under Rule 12(b)(1) may be brought as a facial attack — that is, a challenge to the sufficiency of the complaint — or a factual attack — taking in evidence beyond the pleadings. *Cartwright*, 751 F.3d at 759. For the latter, courts have "wide discretion" to consider affidavits and documents "to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The Court also may take judicial notice of its own records. *See* Fed. R. Evid. 201(b)(2); *United States v. Doss,* 563 F.2d 265, 269 n. 2 (6th Cir. 1977). The plaintiff has the burden to prove the jurisdictional facts, *Cartwright*, 751 F.3d at 760, and both sides have had the opportunity to present evidence on that issue. The Court "has the power to weigh [that] evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60.

Graminex brings this case seeking a declaratory judgment. Congress has authorized federal courts in appropriate cases to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Act is 'an enabling Act, which confers discretion on the court rather than an absolute right upon the litigant.'" *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952)). "The Declaratory

Judgment Act's 'textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of law in which concepts of discretion surface.'" *Ibid.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995)). Before determining whether discretion favors maintaining this case, the Court first turns to the question of standing, although the two issues overlap in this case.

To establish standing, a plaintiff must show that he or she has suffered an "injury in fact," that was caused by the defendant's conduct, and that a favorable decision will redress that injury. *Town of Chester v. Laroe Estates, Inc.*, --- U.S. ---, 137 S. Ct. 1645, 1650 (2017) (quoting *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016)). The first element requires proof of an actual injury, that is, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Ibid.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Ibid.*

In declaratory judgment actions, "[a] controversy exists when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Green Edge Enter., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1300 (Fed. Cir. 2010) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007)). "A reasonable apprehension of suit is not necessary." *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2010) (citing *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007)).

Although the defendant's motion raises a number of issues, standing is at the heart of this dispute. The most efficient way of addressing the parties' arguments is by separating the counts in the complaint into two categories: (1) the claims seeking a declaration of rights as to noninfringement and unfair competition, as well as abandonment of the CERNILTON and CERNITIN marks and (2) the claims seeking to cancel Cernelle's registrations for eight of its marks based on fraud.

A. Noninfringement, Unfair Competition, and Abandonment (Counts I and II)

Count I of the complaint seeks a declaration that "Graminex's supply, sale, offering for sale, advertising and distribution of nutraceuticals and nutritional supplements do not infringe any proprietary rights owned by Cernelle and do not result in any acts of unfair competition with Cernelle." Count II seeks a declaration that Cernelle has abandoned the CERNILTON and CERNITIN trademarks. Graminex points to the cease-and-desist letters as evidence of an impending injury, arguing that they create a "reasonable apprehension" of a *new* lawsuit brought under the Lanham Act sufficient to confer standing. In the entire context of the parties' stormy relationship, however, that contention is not plausible.

In determining whether a justiciable Article III controversy exists, the Sixth Circuit advises us to "look behind the declaratory judgment form of this action." *Marel v. LKS Acquisitions, Inc.*, 585 F.3d 279, 280 (6th Cir. 2009). "A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). "The concepts of 'adverse legal rights' and 'legal risk,' used in these cases to describe the standard for jurisdiction require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact

that the declaratory plaintiff has preempted it." *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006). "Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." *Ibid.*

Here, Graminex alleges that through its multiple demand letters, Cernelle threatened to bring claims for infringement and unfair competition under the Lanham Act, to which Graminex would have asserted abandonment as a defense. But that scenario presents nothing more than a theoretical — and unlikely — possibility. Cernelle already sued Graminex for trademark infringement in 2003 and won a favorable settlement. Part of that settlement included an injunction that prevented Graminex from doing the very things that it fears might provoke a new lawsuit under the Lanham Act. Why would Cernelle do that, when it could resort to the more direct expedient of seeking to enforce the settlement and injunction? There is no good answer, especially where all conduct that could be found infringing or could constitute unfair competition also would be prohibited by the permanent injunction and settlement agreement. And Cernelle vehemently denies ever threatening a Lanham Act suit, asserting that a fair reading of the three letters plainly shows that Cernelle only ever intended to pursue contempt for the alleged violations. In the letters, Cernelle repeatedly references only violations of the permanent injunction and settlement agreement. Graminex's asserted fear of a *new* Lanham Act lawsuit is an injury that decidedly is "conjectural or hypothetical," not "actual or imminent." *Spokeo*, 136 S. Ct. at 1548.

Moreover, the conduct that stirred up this old dispute was the main focus of the motion hearing in the original lawsuit, in which Cernelle prevailed for the most part. Replowing this ground would do nothing more to "settle the controversy" between these parties or "serve a useful purpose in clarifying [legal] relations." *Western World Ins. Co.*, 773 F.3d at 758 (quoting

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)). Pursuing these arguments again would not be a prudent use of the declaratory judgment tool, when litigation of the actual, live controversy is the "better [and] more effective" alternate remedy. *Ibid.*

The abandonment claim falls in the same category, with an added twist. Graminex argues that it has a real interest in the CERNILTON and CERNITIN trademarks sufficient to ask the Court to declare them abandoned. But Graminex bargained away any interest it could have had in those marks when it entered the settlement agreement in 2006. Moreover, Graminex raised the same arguments in the contempt litigation when it moved to modify the permanent injunction to remove those marks from its strictures. It contended that Cernelle abandoned those marks through nonuse, and the Court rejected that argument. *Cernelle v. Graminex, L.L.C.*, --- F. Supp. 3d ---, No. 03-10291, 2020 WL 549088, at *15-16 (E.D. Mich. Feb. 4, 2020). There is no longer a live controversy between the parties over that claim; this Court's decision in that other case moots the issue here. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (quotations omitted).

Graminex has not established subject matter jurisdiction for the claims in Counts I and II of the complaint because it has not satisfied all the requisites of Article III standing.

B. Fraudulent Registration Claims (Counts III Through X)

Cernelle seeks dismissal of the fraud claims in Counts III through X based on a pleading deficiency. However, all those claims — not just those concerning CERNILTON and CERNITIN — also must be dismissed for lack of standing.

The Lanham Act creates a private right of action for damages for false registration of a trademark. *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950, 953–54 (N.D. Cal. 2005). Congress ordained that "[a]ny person who shall procure registration in the Patent and Trademark Office (PTO) of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action *by any person injured thereby* for any damages sustained in consequence thereof." 15 U.S.C. § 1120 (emphasis added). Once again, a person seeking cancellation of a trademark must demonstrate an actual or imminent injury. "To obtain cancellation of the registration, the petitioning party must show both standing and valid grounds for cancellation." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1161 (Fed. Cir. 2002) (citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000)). "Standing requires only that the petitioner have a 'real interest' in the cancellation proceeding." *Ibid.* (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092 (Fed. Cir. 1984)). "In most settings, a direct commercial interest satisfies the 'real interest' test." *Ibid.* (quoting *Cunningham*, 222 F.3d at 945).

Counts III through X essentially are identical in substance, differing only in the mark at issue and the date when the allegedly fraudulent registration was submitted for renewal. Graminex pleads the same injury for each of the fraudulently procured registrations: "Graminex is being, and will be, damaged by the continued registration of the mark shown in the Registration because it has been threatened by Cernelle's above-identified protest letters (as well as in the enforcement Motion) alleging infringement and unfair competition in connection with, *inter alia*, that registered mark." Compl. ¶¶ 27, 36, 45, 54, 63, 72, 81, and 90. In none of the cease-and-desist letters, however, does Cernelle ever call Graminex to task for the use of any of those trademarks other than CERNILTON and CERNITIN. Cernelle does not even mention those brands, except in the

first letter summarizing the terms of the settlement agreement and injunction. Neither side has pointed to any conduct by Graminex that could support a claim under the Lanham Act — or even the settlement agreement or injunction — with respect to those other brands. Because there is no threatened litigation as to those brands, there is no "imminent," "concrete" injury. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. None exists here.

Graminex cites *Petroliam Nasional Berhad v. GoDaddy.com, Incorporated*, 897 F. Supp. 2d 856, 870 (N.D. Cal. 2012), for the proposition that a party has standing to seek cancellation where the holder of a mark is "using the registration as a sword" against an alleged infringer. In that case, the plaintiff brought an infringement claim against GoDaddy, who countersued to cancel the plaintiff's trademark registration on grounds of abandonment and use that exceeded the scope of registration. *Ibid.* GoDaddy conceded that it had no commercial interest in any of the plaintiff's marks, nor did it claim ownership in the mark. *Ibid.* The court nevertheless found that "because Go Daddy is in danger of being financially affected by Petronas['s] assertion of its mark — even though Go Daddy does not meet the traditional qualification of a party that claims a right to use the name in the mark — Go Daddy has arguably established standing." *Ibid.*

That reasoning does not hold up, however, against the proscriptions against allowing a party to proceed when no actual injury can be demonstrated. Without proof of actual skin in the game, the lawsuit is no more than "a vehicle for the vindication of the value interests of concerned bystanders" who have no right to ask a federal court its advice about the validity of a trademark registration. *United States v. SCRAP*, 412 U.S. 669, 687 (1973).

The case of *East Iowa Plastics, Incorporated v. PI, Incorporated*, 832 F.3d 899 (8th Cir. 2016), is instructive. In that case, the plaintiff and defendant operated separate businesses selling

different plastic agricultural products with the same trademark, which each acquired lawfully from a common seller and licensor. *Id.* at 900-02. After ten years, defendant PI registered the trademark with the PTO, falsely asserting that no other company had the right to use the mark in commerce. *Id.* at 902. EIP sued under the Lanham Act asking for, among other things, cancellation of the registration, citing 15 U.S.C. § 1120. The district court found that PI acted fraudulently when registering the mark with the PTO, but EPI suffered no damages. Nevertheless, the court cancelled the registration under 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration [and] order the cancelation of registrations . . . ."). *Ibid.*

On appeal, the Eighth Circuit held that the district court had no jurisdiction to cancel the registration because, after it found that EPI suffered no damages (and therefore no injury), it had no standing to pursue the cancelation remedy. *Id.* at 903. The court observed that section 1119 "only provides a remedy for some other violation of the trademark laws, not an independent cause of action." *Ibid.* (citing cases). The court allowed that non-monetary injuries might qualify, but there was no evidence of any in that case. "Once the district court had determined that EIP did not suffer any damages from PI's violation of section [1120], there was no further basis for EIP to have standing to seek cancellation of the [offending] registrations." *Ibid.*

The Eighth Circuit also rejected the idea that a generalized injury that results from a fraudulent registration is sufficient to confer standing. Citing *Spokeo*, 136 S. Ct. at 1545, the court reiterated that injuries must not only be concrete but also particularized. *Id.* at 904. Although a generalized injury might result from the PTO register containing marks procured fraudulently, "such injury is not particular to EIP, and cannot support its standing to bring a section [1120] suit." *Ibid.* "To paraphrase the Supreme Court, 'although a suitor may derive great comfort and joy from the fact that the [Patent and Trademark Office] is not cheated, that a wrongdoer gets his just deserts,

or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury.'" *Ibid.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

Graminex does not necessarily attempt to establish standing based on a generalized grievance. Instead, Graminex has alleged that it is damaged by Cernelle's fraudulent registrations "because it has been threatened by Cernelle's above-identified protest letters (as well as in the enforcement Motion) alleging infringement and unfair competition in connection with, *inter alia*, that registered mark." But *East Iowa Plastics* rejected that basis for standing, too. Referencing another requisite of Article III standing, the court noted that "an injury must be 'fairly traceable to the defendant's allegedly unlawful conduct.'" *Id.* at 905 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The burden of having to defend claims based on an improperly registered trademark cannot be fairly traceable to the allegedly unlawful action of registration, the court reasoned, "because the Lanham Act protects both registered and unregistered trademarks, . . . even without its registrations, [PI] still would have had a substantially similar Lanham Act cause of action." *Ibid.* (citations and quotation marks omitted). Because EPI would have faced nearly identical litigation burdens even if PI had not obtained the registration by fraud, "any injury based on litigating counterclaims is not 'fairly traceable' to that fraud." *Ibid.* The court fortified its position by citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), where the Supreme Court held that after a manufacturer voluntarily dismissed its trademark infringement claim against a competitor (Already), the district court properly dismissed the competitor's invalidity counterclaim as moot because it lost standing to pursue them. 568 U.S. at 95. "If EIP were right that standing to seek cancellation could be based on having been forced to defend against an infringement suit, however, Already would presumably have had standing." *East Iowa Plastics*, 832 F.3d at 906.

Graminex has failed to allege an injury "fairly traceable" to the fraudulent registrations. There are no allegations that Graminex has attempted to register its own marks, or that its applications for those marks were rejected based on the existence of Cernelle's registrations. *See id.* at 904-05 ("A particularized injury might result, for example, if EIP had tried to apply for its own federal registration for the PAKSTER trademark, and been impeded by PI's preexisting registrations."); *SPFM L.P. v. Midmark Corp.*, No. SA-15-CA-00124-FB, 2017 WL 5235670, at *11 (W.D. Tex. July 31, 2017) (citing *East Iowa Plastics* and finding that the plaintiff had suffered a "particularized injury" sufficient to confer standing to seek cancellation where its own trademark applications had been rejected due to the defendant's allegedly fraudulent registration). Instead, Graminex focuses exclusively on the threat of litigation posed by Cernelle's cease-and-desist letters, the basis for which — alleged violations of the permanent injunction and settlement agreement — would have existed regardless of the registrations. *See SmileDirectClub, LLC v. Berkely*, No. SACV 18-1236 JVS, 2018 WL 8131096, at *9 (C.D. Cal. Oct. 26, 2018) (citing *East Iowa Plastics* for the proposition that a court lacks subject matter jurisdiction to adjudicate cancellation where a lawsuit "d[oes] not involve any injuries *caused* by a trademark registration") (emphasis added). And as the *East Iowa Plastics* court observed, even if the Court credits Graminex's position that a threat of an infringement action is imminent (which cannot be discerned from the cease-and-desist letters for the marks that are the subject of Counts V through X), those types of claims do not necessarily depend on valid registrations. Graminex therefore does not have standing to bring cancellation claims based on fraud, and Counts III through X must be dismissed for lack of subject matter jurisdiction.

III.

Graminex has not established Article III standing to bring the claims in any count of its complaint. Nor has it shown that accepting jurisdiction under the Declaratory Judgment Act would be a sound exercise of the Court's discretion. Because Graminex lacks standing to seek cancellation of Cernelle's registrations on the basis of fraud, the Court need not address Cernelle's argument that the claims do not meet Rule 9(b)'s heightened pleading requirements.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss (ECF No. 15) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2020

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 31, 2020.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI